With her argument next in Case 23-824, United States v. Miller. Ms. Dubin. Mr. Chief Justice, and may it please the Court. The Bankruptcy Code grants trustees an array of avoidance powers, including the power to avoid fraudulent transfers under Section 548, subject to a two-year federal look-back period. This trustee's claim is time-barred, so he's relied on a different code provision, Section 544B. But 544B has no application here. That provision looks to whether a real-world creditor can avoid a transfer under state law with a longer look-back period. Rather than leave that right to one creditor, Congress authorized the trustee to pull it into bankruptcy to benefit all creditors. But 544B doesn't come into play unless a transfer is already avoidable under state law. 544B simply allows the trustee to piggyback off that existing vulnerability. In practice, that means 544B has a two-level structure. The trustee must first identify a creditor with the right to avoid the transfer under state law. If so, he can step into the creditor's shoes and avoid the same transfer under 544B. But if not, he has no one's shoes to step into, and he can't use 544B to circumvent the code's two-year look-back period. Here, any creditor's attempt to avoid these federal taxes under state law would obviously be barred by sovereign immunity and other obstacles. The trustee's parallel 544B action should therefore fail on the merits. Respondents' main argument is that Section 106A alters that analysis. But 106A waives immunity at the federal level for 59 bankruptcy code provisions. 106A plainly does not waive immunity for a state law claim outside bankruptcy. And 106A likewise makes clear that it does not alter the substance of the identified code provisions. Rather, it waives immunity so that those provisions can be applied to sovereigns according to their terms. And here, 544B, by its terms, allows a trustee to avoid a transfer if and only if a creditor could avoid that transfer outside bankruptcy. Nothing in 106A alters that requirement. The trustee's contrary theory misreads 106A and it misses the basic design of 544B. I welcome the Court's questions. Could 106 be written in a way that you can get around the immunity problem at merits level at under 544? I think it could be, and I think the way you would do it would be to say something like, in actions under the identified sections, governmental units should be treated like private parties in like circumstances. There actually is an analogous provision like that in the code under the Federal Tort Claims Act. Congress did write something like that to make sure that the United States could be liable under state tort law under the terms set forth in that act. But I think that sort of bakes in this idea that Congress would have wanted that result, that Congress would have wanted the United States to be liable under a provision like 544B on the merits. And that goes to the fundamental premise of 544B, which is that 544B exists in the code in order to mirror liability that exists outside of bankruptcy. And I don't think there's any reason to think that Congress would have wanted to expose the IRS to liability under state law through a provision that only does what already exists outside of bankruptcy. Counsel, what federal causes of action, besides maybe the FDCPA, might a trustee be able to assert via 544B? That's probably the best example of what the trustee could assert vis-a-vis 544B. But usually 544B isn't used against the federal government, which I think is where I take it. That's where you're going with this. But we don't think that's a problem with our interpretation, because 106A waives immunity as to 59 sections by section, not by subsection. And the waiver has an important role to play as to 544A vis-a-vis the United States. And that's because under 544A, waiving immunity allows the trustee to prime a tax lien against the United States if it's not properly filed. And that can have a huge consequence for the distribution of the estate to unsecured creditors. Let me ask you that, just about states. It's a slightly different question, but kind of same realm. The state amici say that if we construe this, if we construe it as the trustee wants, it's going to raise a constitutional question about whether Congress can abrogate state sovereign immunity under the bankruptcy clause. Is Katz your answer to that? I think Katz is the answer to that, but I also don't think that anything in this case requires the court to reach that constitutional question. I think there are various ways in which the code brings in state law, and as long as it brings in state law uniformly, in general, that is sufficient. But here the problem isn't that there's some constitutional obstacle to bringing in state law. It's that the way in which 544B operates is only to bring in state law when that transfer is already vulnerable under state law. So it's a problem on the merits. Thank you. Ms. Dubin, I actually wanted to follow up on the first question that Justice Barrett asked you, and I understand your response is that the waiver in 106 will still do work with respect to 544A, even if it does no work with respect to 544B. Is that the gist of your answer? With a small correction, it definitely does work as does the United States with respect to 544A. It also does work with respect to any sovereign that has exposed itself to state law outside of bankruptcy, and some states have done that under 544B. Sure. Okay. But 106 waives sovereign immunity for the federal government with respect to all of 544. It doesn't single out A. And I think the gist of your argument is that as you read 544B, 106 is effectively rendered a nullity. What's your response to that? Sure. So two points on that. The first point is that the way that 106 operates with respect to 544B is defined by the limitation in 106A and the nature of 544B. So 106A is a waiver of immunity as to those 59 code provisions that you referenced, but it specifically says in 106A5 that nothing in the section shall create any substantive claim for relief that doesn't otherwise exist. No, it doesn't create a new cause of action. I grant you that, but that's 544B is what your friends on the other side would say, right? So it says both that it doesn't create any substantive claim for relief and it doesn't create any new cause of action, but critically that takes us to 544B, which is what does 544B do? And 544B, what it does is it says that the trustee can mirror an existing state law right. So this transfer is already vulnerable. Well, it doesn't say that. It talks about voidable. It doesn't talk about void. It says voidable. What do you do with that? Sure. So voidable under applicable law by an actual creditor means that you look to the state law or to the law that's being invoked and see whether that transfer could be avoided under that law. And when you look to Utah law here, the way that a transfer is avoided, like in all states, is by bringing an avoidance action against a particular defendant. And Utah law, the applicable law being invoked here, makes clear that the identity of the transferee matters. You can't avoid a transfer, for instance, against someone who takes in good faith. So it's critical to understanding the applicable law, who the defendant is. Yeah, but that doesn't apply. The good faith purchaser rule doesn't apply here, right? Right, but I'm talking about what 544B does. And I think what 544B makes clear by looking to whether someone actually had this right outside of bankruptcy is that what it's doing is saying this transfer already could have been affected outside of bankruptcy, so we'll allow the trustee to invoke that for the benefit of all creditors. If I understand what you're saying, and I'll let you go in a second, I promise, is that essentially the trustee steps into the shoes of a normal creditor. And that's how you read 544B. I don't see that. That language isn't there. It does exist in some other statutes, which is notable. And we've got a very old case written by Oliver Wendell Holmes, no less, Moore v. Bay, that says sometimes a trustee's powers to avoid property transfers can transcend the rights of the creditor in whose shoes he might otherwise step. What do we do about that? Sure. I'd like to address Moore v. Bay, and then I'd like to return, if I can, for a minute to the text of 544B. As to Moore v. Bay, that is a venerable case, as you mentioned, and what it means is that the trustee has the power to avoid, when he is avoiding a transfer, to recover more than just the amount that that creditor could have avoided outside of bankruptcy. Exactly. That is an exception, but it is an exception that's baked into 544B. 544B was understood to incorporate that exception. But when it did so, it made clear that in every other way, the trustee's rights are coterminous without actual creditors. Where do you get that in the language? In the Moore v. Bay situation, what you have is a transfer that is already avoidable, and the question is just the extent of recovery. Of course, we don't have that here. You get that from the language from avoidable under applicable law by a creditor holding an unsecured claim. That creditor holding an unsecured claim is referring to an actual creditor. What Congress was concerned about in 544B was a real right that exists outside of bankruptcy, and there's a reason for that. It's because the other federal avoidance powers convey all the ways that Congress wanted to give federal rights to avoidance. 544B does something different. It recognizes that sometimes out there in the real world, an actual creditor has that right, and Congress picked that up with requiring an actual creditor in 544B. But I wanted to also address the point that you said where you said that we think that this is what the text means. It's not what we think the text means. It's how this provision, 544B, has been interpreted for over a century. It is uniform case law. That's why we're here, right? No, we're here on the 106A question. How the two interact. Well, kind of. All of the cases in the split on 106A are all asking how does 106A affect that actual creditor requirement. None of them are challenging the actual creditor requirement. If you look at all those cases, for instance, DBSI, the case that started this split in the Ninth Circuit, everything about that case acknowledges this. Everyone agrees 544B operates by looking for an actual creditor. The question is when the defendant is the United States, how does 106A affect that analysis? Are you supposed to disregard sovereign immunity that would exist in an actual creditor suit? Everyone accepted that as a premise because that is how 544B has always been understood. Ms. Dubin, you say this actual creditor requirement, which everyone acknowledges exists in 544B, is there for a reason. And I've been struggling with that and I want your reaction to this. Is it because Congress was making a policy choice related to its concern about the potential disruptive nature of avoidance? So the general trustee avoidance power has a two-year statute of limitations because when you come in and you avoid a previously existing transaction involving innocent third parties, that's like a big deal. That's causing a lot of disruption in the market. And so ordinarily, a trustee can only do that for two years after that transaction has occurred. There's no such limitation in the 544B world in terms of timing. But maybe, maybe, this is my theory, the relevant limitation is this actual creditor requirement. That what's happening there is the trustee gets the avoidance power, but only to the extent that an actual creditor could have affected the same kind of disruption in the market by bringing this kind of action on his own. What do you think about that? I think you have it exactly right, but I would add one piece to it. And it's why does Congress care that an actual creditor has that right in the real world? And it's because that transfer could be invalidated in the real world as to that transferee. So all Congress is doing is saying that the trustee, instead of leaving that right to one creditor alone, he is going to vindicate the principle of equality among creditors, equality of distribution, bring it into the bankruptcy and that transfer can be avoided for the benefit of all creditors. But absent that situation where this transfer is already vulnerable, Congress's policy judgment is about repose, about who should be able to avoid the transfer, govern, and 548 governs other than in that situation. Counsel, can I take you? I think this will be quick. You say in a footnote in your brief, and this follows up on Justice Jackson's question, that the way this would work for the actual creditor who actually had the claim in the real world is that if the bankruptcy estate is closed and that person is actually still holding the claim, that they could then pursue it assuming that it was still available. How often does that happen? I think it happens. I don't know. I can't give you exact numbers, but it certainly can happen. It's not some fantasy. Of course, if the actual creditor has a right that the trustee can invoke and it's used in 544B, then there will no longer be the right outside of bankruptcy. But if, for instance, the trustee doesn't take advantage of that right or runs the statute of limitations within bankruptcy, then the actual creditor will regain the right when the bankruptcy closes. And it's same for if the transferee has the money and then someone, the actual creditor, runs and grabs it before the trustee has a chance, then the trustee can't get it because presumably there's preclusion that would apply. That's right. Can I take you back to the distinction between 544B and 544A that you're drawing? And as I understand the difference between the two sections, it's 544B concerns an actual creditor and 544A concerns a hypothetical creditor. Why wouldn't sovereign immunity play similarly with respect to both those provisions? So to the extent that sovereign immunity is always going to bar a 544B action, why wouldn't it do the exact same thing with the hypothetical creditor and a 544A action? Sovereign immunity will operate in the same fashion whenever what the bankruptcy code provision is asking you to look to is whether an action could be viable outside of bankruptcy in the real world. But 544A doesn't require that. And I think a really good example of that is the tax lien that we've been talking about. 26 U.S.C. 6323 says that a tax lien that isn't properly recorded isn't valid against a judgment lien creditor. It simply isn't valid, no immunity required. The trustee is allowed to step into that shoes of that judgment lien creditor under 544A. So he now has that, the lien is not valid against him. How does 106A help him? 106A helps him enforce that. He can now prime the United States. He now has priority over that tax lien. There's no issue of immunity outside the bankruptcy proceeding and 106A removes the immunity within the bankruptcy proceeding. This is done quite a lot. Really the way it manifests in practical terms is usually when we have a tax lien that's not properly recorded, we will file as an unsecured creditor because we know the trustee can prime the lien. Of course, if 106A wasn't there, that wouldn't be the case. Got it. Just curious, why did the trustee not act within the two years under 548 here? He was too late by the time he was appointed. Oh, it was too late. It wasn't just the appointment. At the time the bankruptcy was filed in 2017, these transfers were in 2014. The two-year look-back period had already expired. And that goes to the concerns Justice Jackson was talking about, which is this repose that the federal statute makes into it. All right. Thank you. And as a practical matter, is that what 544B gets you that you don't get under 548, that the two-year statute of limitation in 548 versus some states have longer look-back periods? That's exactly right. In most situations, the terms of 548 are basically very similar to the terms in the state law in the Uniform Fraudulent Transfer Act and its successors. You're basically looking for whether a transfer was given for reasonably equivalent value and whether the debtor was insolvent. And those terms are essentially very similar in 548 and in the state laws being incorporated through 544B. But as you say, several states, many states have adopted longer look-back periods or longer limitations periods, four years or even six years. So that would be why the trustee is using 544B. The trustee can do so if an actual creditor could have done so outside of bankruptcy because that transfer was vulnerable, but he can't do so where no actual creditor already had that right. Then he's stuck with 548, and he would be stuck with 548 in this case. I mean, just taking a step back, Ms. Dubin, there is something a little bit peculiar about the argument, right, saying 106, way of sovereign immunity, and what happens as a result of that is you can hail the trustee into court, and then the trustee gets to court, and it turns out he always loses. So what was the point of the thing? Sure. So two points on that. On the first point, he loses because of the nature of 544B, because of the merits. I get that. It's just like, why does that matter to him? Or why would it have mattered to Congress, more to the point? Like, why would Congress have gone to this trouble of waiving sovereign immunity if the trustee was always going to lose anyway as a result of the substantive question in the suit? Yes. So this goes to my second point. 106A is not a waiver about 544B. 106A waives immunity with respect to 59 code provisions. It is a general waiver. Do you think you would have the same argument if it was just a 544 waiver? I think this would be a much harder case if it was just a 544B waiver. I don't think it would be a hard case if it was a 544 waiver because of the work that it does in 544A. I think if you had the same waiver written with respect only to 544B, you would have this question as to why Congress wrote a waiver that doesn't have practical effect as to the federal government. But if I understand the argument that you're making, you're saying, well, because Congress included so many things, we don't have to take any one of them particularly seriously. That is not at all our position. Because it doesn't sound all that good. Yes, so that is not our position, and let me explain why. First of all, 106A identifies each of the 59 provisions, not by subsection, but by section. So it has to have meaningful effect as to each section, and it certainly does have meaningful effect as to 544A. When Congress was identifying sections for which the waiver of immunity would operate, of course it would include section 544. But I think it is also crystal clear that Congress would not have thought that that waiver of immunity would expose the IRS to substantive state liability under 544B. And that's because Congress specifically said in the waiver that nothing in the section creates any substantive claim for relief that doesn't otherwise exist. And everyone has always known that the way 544B operates is only by pulling in existing state law liability. And everyone knows that the IRS is not subject to existing state law liability. So when Congress wrote a waiver that included 544, I think it is very clear that Congress did not think that that waiver would have the effect of altering On what Congress might have been thinking, the other side says that your position will create a playbook for fraud, that you pay your personal tax debts with corporate funds and let the IRS then, in their words, hide behind sovereign immunity. That would shortchange creditors. I want to make sure you respond to that. Thanks. I appreciate the opportunity to do that. I think that argument and those considerations cut the opposite direction. The trustee's position here would allow these insiders, the wrongdoers here, to go free. In his world, he recovers this money from the IRS. He then cannot go after the insiders because he's entitled to only a single satisfaction under the Bankruptcy Code's provision. Meanwhile, we can't go after the insiders either because the statute of limitations has expired and that will be ever more likely when you're using a longer limitations period to go after these transfers. By contrast, under our view of the world and how this is supposed to work, when you're outside the look-back period, you should be going after the insiders. And you have claims to do that because they are the wrongdoers here. They used corporate funds to pay their own debts. So you should be able to go after them for corporate misappropriation, breach of fiduciary duty, and all of those claims that come from insiders taking corporate money. Here, and we find this a little bit inexplicable, the trustee did go after the insiders, but one case was dismissed for failure to prosecute and one was settled, and we assume not settled for this because that would obviously violate the double satisfaction rule. Justice Thomas? Justice Alito? Justice Gorsuch? One quick question. Let's suppose that the money didn't go to the U.S. government but to a private party along the way. The trustee, in your view, could recover for that? If there was an action against the private party. Obviously, private parties also have defenses. Let's assume instead of the United States here it was a bank, and the bank took in good faith for a mortgage that it was owed, then you wouldn't have a claim against the bank. You might have a claim against an insider that arranged that for some benefit to himself, and you would be limited in bankruptcy. You could pursue that person. So long as he doesn't have a defense outside of bankruptcy. Justice Kavanaugh? Just one question about what work 106A does for 544B if you prevail. I mean, your position would be, well, it's still doing work vis-a-vis the states, right? And is it odd? I mean, just kind of walk me through this double layer thing. I mean, as I understand your argument, it's that 544B has a nested cause of action in it under applicable law. So you're standing in the shoes of the creditor pursuing someone under state law. If under state law you could recover that money from a governmental entity that would otherwise have state sovereign immunity, then you have a claim that's been nested by virtue of the under applicable law, but because the vehicle through which the trustee is asserting that cause of action is 544B, you still need a separate abrogation of the state sovereign immunity to move forward, and that's the work that 106A is doing? Yes, that's right. Let me try to say it back to you and see if you think we agree. The work that 106A is doing as to 544B in that situation is the same work it's doing as to the other avoidance provisions that are referenced in 106A, which is these are federal code provisions. They would not normally apply to a sovereign absent waiver abrogation of immunity. So you would, let's say, take 548, the federal fraudulent transfer provision. Normally you could bring that against a private party, but there's no indication you could bring that against the United States or against that state sovereign. 106A allows the trustee to assert that cause of action against a sovereign, absolutely, the federal cause of action. You're right to say that the way 544B works is by looking to what would have happened under state law, whether there's a viable avoidance action outside state law, and that's where that state's waiver of sovereign immunity comes into being, which is if that state has exposed itself to fraudulent transfer liability in its own courts, the trustee can now mirror that inside the bankruptcy. But absent 106A, under the way that you're viewing this, the trustee could not proceed under 544B. That's right, and that's the purpose of 106A's waiver as to the 59 provisions. It's to allow those federal code provisions to be applied, invoked, enforced against sovereign entities. That's the work it's doing. So the other side says, well, that's pretty weird because then you're looking for two waivers of sovereign immunity or an abrogation of sovereign, two abrogations, a waiver and an abrogation that you have to double team in order to go. You want to respond to that? Yes, thanks. I don't think that our position is asking for two waivers. To the contrary, what our position is resting on the premise of is that when Congress made a provision like 544B, which turns on liability that exists outside the code, it doesn't mean to affect that by waiving immunity inside the bankruptcy proceeding. So we disagree with the premise that Congress wanted to accomplish this thing. But you're right to say that if Congress wanted to accomplish it, the way to do it would be it has to do something about 544B. And the answer would be to alter, the most obvious answer would be to alter the way 544B operates. And instead of operating on the basis of an action that's actually viable outside bankruptcy, which, again, is not our interpretation, it is the uniform understanding for over 100 years of 544B and its predecessor provisions, would be instead of requiring that, it would say something like in 544B, transfers to the United States are avoidable to the same manner and the same extent as transfers to a private party, similar to what Congress did in the FTCA context. Justice Jackson? I think the thing I found interesting in the exchange you just had with Justice Barrett is that she approached the analysis by starting with 544 and you started with 106A. And I wonder if that might be the sort of, to the extent there's any disconnect, and I don't think there is, but the framing is slightly different. You say we need the waiver of sovereign immunity to start to allow for the trustee to bring an action and then to determine whether or not that action can proceed or is successful or whatnot, you go to 544, which says the trustee can proceed only to the extent that he could, that an actual creditor could outside of bankruptcy, and sovereign immunity there can do the work to prevent the trustee from proceeding. Is that how you're viewing this? I actually don't think it matters where you start. I think the way Justice Barrett started was perfectly fine, too. This is more just conceptually trying to understand what's going on here as sort of a whole code. What is Congress doing here? And 106A absolutely waives immunity as to these federal code provisions. It doesn't matter whether you do that at the end of the analysis or at the beginning of the analysis. But when it does that, it specifically says it's not altering the substance of those provisions. So what do you do as a court adjudicating an action brought under one of these provisions? You go look at what are the substantive terms. For most of them, the substantive terms don't implicate something happening outside of bankruptcy. But 544B works differently, and it's long been understood to work differently. You have to go look at what's happening outside of bankruptcy. And nothing in 106A suggests that Congress meant to affect what's happening outside of bankruptcy or that requirement that you look to what's happening outside of bankruptcy. Essentially what the trustee is asking for here, and it's a little hard to put it into words, but we both agree that 106A waives sovereign immunity at the federal level. We also both agree that 106A does not waive immunity at the state law level. So what she's asking for is that when you look at the 544B's actual creditor requirement, you close your eyes or you disregard sovereign immunity that hasn't been waived, that continues to exist. And that's where the theory is wrong, and it's why the 544B claim fails on the merits. Thank you. Thank you, counsel. Ms. Blatt. Mr. Chief Justice, and may it please the Court. 106 waiver with respect to 544 means that trustees can avoid fraudulent transfers inside bankruptcy even though sovereign immunity applies outside bankruptcy. With respect to, even read very narrowly, means directly relating to 544. And the waiver that concededly applies to the trustee's claim has the same direct relationship to the incorporated state law elements. No textual or logical distinction exists between the two. 106A2 also lets courts hear any issue respecting 544's application to governments, so courts can thus hear these claims without regard to sovereign immunity. Congress waived immunity knowing that 544 has always required trustees to step into creditor's shoes under state law. By waiving immunity, Congress clearly expected trustees to sue governments by relying on state law. Congress could not have plausibly intended to waive immunity only to see it snuggled in through the back door under the guise of applying state law. Nor is it plausible that Congress has ever waived immunity but only contingent on a second waiver. No such statute exists in the U.S. Code, nor does any statute contain a double waiver. Congress spoke expressly when it wanted to give the IRS special treatment and to make exceptions for fraudulent transfers, but it did neither for the IRS in 544. The government's position overrides these choices and allows the IRS to keep assets that every other transferor would have to return. That result would prevent the trustee from recouping this money and paying it to the bus drivers and the mechanics and the vendors, who certainly gave All Resort more value than the IRS did. The government's position finally destroys creditor equality. Where governments are creditors, like they are here, the government gets to keep the fraudulent transfer and its share of a much smaller pie. I welcome the court's questions. What do you do with your analysis under your analysis with 106A5? A5, well, I think it says on its face that it doesn't create liability that doesn't otherwise exist under this title. And the government concedes that the trustee, I think it said it six times, the trustee has a cause of action to which sovereign immunity has been waived under 544. It's just contesting whether it went to the incorporated elements. And there's no logical distinction how 105 is not implicated to that waiver, but somehow it's implicated to the waivers extending to the elements. It also just says otherwise existing under this title or non-bankruptcy law. And everyone concedes that the trustee has a cause of action, but for one defense and one defense only, and that's sovereign immunity, which is the very defense that 106 waives. Now, I wanted to get to the 544A point because the government does not dispute that 106A does absolutely no more work under 544A than it does under 544B, meaning 544A incorporates state law. Absent a second waiver of immunity, which the government says accurately exists under, I don't know if it's 28 USC, but 2610, the quiet title, there is no state law where a bona fide purchaser or bona fide creditor could avoid the lien. So both under A and B, the government has this two waiver theory. 106A is just kind of irrelevant. And in terms of the idea that this applies to 59 sections, if you could put your shoes, pun intended, in the form of Congress who overruled the Supreme Court's decisions in two of them, you're asking Congress to go back again. And in Hoffman, you said to Congress, you were too scattershot because you didn't list the code provisions. It just would have applied to 100. Here Congress listed all 59. And another thing that's interesting just about making Congress do this again, the government doesn't dispute that its position would make Congress have to go through and add a second waiver on all the provisions to which the state law is incorporated. And we identified many, and they don't dispute that one of them is 547B. And that's the very same issue in Hoffman. So if you rule against us, you're really telling Congress, after all, they still need to go back and do it a third time and maybe a fourth time, because in the government's view, the state sovereign immunity will always creep in. But, Ms. Blatt, I guess I understand the need for two waivers here. But isn't that a function of Congress's policy choice to incorporate state law as the requirement of 544B? You seem to be accepting that Congress was, in 544B, allowing for the trustee to stand in the shoes of the actual creditor. But you started off by saying the trustee can do more, essentially, by virtue of 106A, than the actual creditor. And I feel like those two things are inconsistent. With respect, no. So, as Justice, first of all, the waiver of sovereign immunity with respect to 544, just on its face textually applies to the elements to the same extent grammatically, logically, that it applies to the claim. You can't waive a claim without waiving the elements. But in terms of what Justice Gorsuch said, there's two very important caveats to this action. No, no, no, no. I'm sorry. Sorry. Before you go to the second part, I don't understand that. I mean, I thought the waiver of sovereign immunity was a threshold issue that didn't tell us anything about the merits of whether or not you win the action underlying it. So we have this initial question, can you even bring this action? And then when you bring it, the court goes on to adjudicate the merits, which is what the elements go to. Right. Without regard to sovereign immunity, which is 106. In the government's view, Congress— But there's a theory in which sovereign immunity is just doing the work of allowing you to bring the lawsuit to begin with. Only to lose. Well, sometimes that happens. Always it will happen because no law, tribal, foreign, federal, no law anywhere waives sovereign immunity with respect to fraudulent transfer. But 544B is bigger than the government. So, you know, there could be others— Well, 106 only relates to the government. Yeah. You're just saying 106 was a—106 application to 544, in all of its applications, A and B was a waste of time. Because sovereign immunity will always be incorporated under state law. And the point I was trying to—which is just a—with respect, it's a dumb statute. Why would Congress waive immunity only to see that there's no way to bring it unless— Ms. Dubin says that A, those claims go forward all the time. They can't go forward, which she concedes, without a second waiver of immunity. And there's only two. There's the federal government and then the four states' generic waiver. Four states— I'm sorry. There is an action against the people who engaged in the fraudulent transfer. So 544B is not useless. It's useless as a government. Well, but why does that matter? Because 106 is a statute. It's not useless. You agree that under 544B incorporates some state law defenses, like the statute of limitations. All of them. And this is my second— That's all of them. No, to state law. Except you're saying all of them— Except for one. State sovereign immunity? No, because that's waived by 106. If I—that would be even weirder to have Congress— That brings us to the constitutional question. But if 544B requires an actual creditor, correct, who can bring the claim? So if there's no creditor who can bring the claim because the statute of limitations has passed, correct? Correct. That the actual creditor requirement assumes that all state law elements are met with the exception of one. And the other thing I was going to make, because it is conceded under state law, Robin Salazar here, the actual creditor, could not recover more than her $55,000. So there's an absolute state law bar. The trustee can get— So he can sue the people, the insiders who made this fraudulent transfer, correct? Right, and he tried. It was not dismissed for failure to prosecute until it settled. I don't know why, but he could have. He did. He did. One of them he settled with. The other, I don't know what he did. He went bankrupt. He went bankrupt. He took over $2 million out of the estate. I'm not sure why we're going to have to incorporate 106B into the state law defenses and say that— I think we're saying incorporate the waiver of sovereign immunity into the only way the trustee can bring this claim, which was relying on state law. All right. Thank you, Ms. Blatt. If I might, just turn us to 544B, where I think the rubber meets the road. And the view, I think, is common ground that the trustee steps into the shoes of the creditor. And then the question is, what does this voidability language mean? And one view is, well, you've got to look at to whom the transfer was made. I think that's the government's view, that that matters. Yeah, I don't know. The statute doesn't say that. If I might.  We're almost there. The government says, well, okay, you step into the shoes of the creditor, and you look at the identity of the transferee. And here, because the transferee is the government, you're out of luck. Your argument, as I take it, is the statute doesn't say that. It says you ask whether the transfer is voidable by the creditor, by the debtor here, whoever he is. And is it voidable? And that transfer is voidable because it was done unlawfully, fraudulently. And when Congress wants to identify the transferee and make a difference there, it does so. For example, it protects good-faith purchasers and some other statutes. Have I got the gist of the dispute accurately? That's correct. And, Justice Sotomayor, what's critical to understand is the government's view is that the trustee illegally went after the insiders because they, too, would be able to assert sovereign immunity. Their view is the trustee, because this went to the United States, it will always block any transfer because the United States, there's no way to ever get at this money. So, a trustee, if it ever goes to the IRS, which has over 10 years to seek, 10 years, which is a lot longer than the four-year statute of limitations, to go after tax liability and is a lot more capable than, I would say, the bus drivers and the workers who work for this estate, the trustee is not here for his personal benefit but to get money to people who need it. Can I ask you a follow-up to Justice Gorsuch's question? How is it? So, I get that the statute doesn't mention the transferee, but how does that make 544B different from 544A? Because isn't the suit you're asserting somewhat hypothetical rather than actual, if you're just imagining the claim existing kind of in the ether? Yes. So, the actual, because that's the creditor. There has to be an actual creditor, but it doesn't matter who the transferee was. So, the transferor here was all resort, the debtor, but the statute just requires by the creditor. It doesn't say as to who the defendant would be. And so, because there's got to be a way under state law to go after all the wrong parties, a creditor in Robin Salazar's shoes could always go after both all resort, that was bleeding assets, the wrongdoers, Bizarro and Cummins, and also the United States. But doesn't, I mean, you concede, right, that other defenses would be available? State law defenses. State law defenses. And how can you know what those defenses would be if you weren't considering who the transferee was? Well, so, because the defenses that I know of and that the cases are talking about are things like stuff that runs to Robin Salazar, like collateral estoppel, like if she had already brought the claim or raised judicata, or latches. So, it's not, there are statutory defenses about good faith transferees, and those would be actual defenses that would go to recovery. But in just pure voidability under Utah law, and this works with all fraudulent conveyance, you're just looking at the elements whether the transfer is voidable. The recovery is a separate issue, both under state law and federal law, like how you go and get the money. But the actual voidability just goes to the transfer. That's why we, and this court has recognized this in the nature of an NREM proceeding. Okay, last, I'm sorry, just last question. You said before that when you're thinking about whether 106A has any work to do for 544B, that there is no state that you are aware of that has waived sovereign immunity in this fraudulent transfer context. Correct. So that it would be a dead letter? You're sure about that? It's not a dead letter as to the four states that waived immunity generically. So, but it is a dead letter because those are a two-year period, and they can already be sued under 548. So the government concedes. Well, but there was a difference about when the statute was enacted. For sure. Yeah. But today, it's a dead letter as to all governments. Except for the four. And that's only because of the way, put aside the, but let's see, the timing issue. We're talking about a question of statutory interpretation. Yeah, it had a one-year impact for, you know, until it was amended to two years. Okay, but during that one year, there were four states. There were four states. But, boy, Congress did a lot for, I'm sorry, did a lot of work for so little effort. And it's only because of the generic waiver. But as a practical matter, which I was saying is so ironic, is that Congress would say, we are abrogating, abrogating very clearly sovereign immunity. But it's only contingent on the sovereigns who we just abrogated for them agreeing to our waiver. And that is just a case I've never heard of that says that. Well, I mean, states could do it in the future, too. Yes, it's like a statute with a contingent remainder. I just don't know of many statutes that are like, here's a waiver, and we hope that everyone else will get on, you know. There's no statute like that, that's contingent. It's bad enough to try to get a waiver when you have a clear and ambiguous waiver. And Congress acted to say, notwithstanding, it's abrogated. And then they list all 59 sections. And the government says, yeah, but you need a second waiver if you ever have to rely on state law. And I do think it's significant that no case of a century is talking about a federal defense. And I think their preemption argument kind of shows how strange it is. Because they're saying, Congress wanted the trustee to rely on state law, but we incorporate a federal law defense when normally the government, your cases would just say you look at that as implied repeal. You're interpreting a federal cause of action. And everyone concedes all elements of state law are met, hook, line and sinker. The only defense that's lacking is the one defense that was waived in the statute. I guess I'm not sure about the nature of the argument. If you're conceding that there were these four states and that there could have been more in the future and Congress wants zero states, why Congress wouldn't have done exactly this? Well, four states is four states too many. It's not 50 states, but it's more than zero states. And who knows, the four might go up to ten. And we're, you know, so we're concerned about this. I mean, I just, I feel bad for Congress that they tried to do the best they could and you're going to say it's not good enough when they said with respect to in the broadest, the government doesn't even have an argument that the immunity, the waiver, is not with respect to the state law elements. They don't even have an argument. They just say, well, sovereign immunity would block the claim, even though sovereign immunity is waived with respect to the claim. Literally, the statute says sovereign immunity is waived with respect to 544B. It has a claim. It has an element. But this waiver of sovereign immunity is not supposed to affect the substance. It's not to affect the substance unless the claim otherwise exists. And again, the only thing lacking here is sovereign immunity. We're not talking about a defect under state law. We have a fraudulent transfer. Ms. Blatt, I guess just conceptually, here's what I'm struggling with and maybe you can help. It seems to me that the result of your view is that the trustee can recover money from the estate under this particular circumstance in a way that no actual creditor could because you concede that all actual creditors bringing a lawsuit against the United States for recovery for this fraudulent transfer would be barred by sovereign immunity. No. No, just if you're just putting aside. Remember, we have that alternative argument that you never had to sue the United States. No, I understand. Putting aside that. Putting aside the alternative argument. Of course we agree that sovereign immunity applies outside of bankruptcy, which is why it makes it so strange for you to hold. No, but let me tell you what I think is strange and then you can respond. All right. So we have a situation in which the trustee is recovering this money, putting it in under circumstances in which no actual creditor could. Ms. Dubin says, but think about the work of 544. What 544 was really about, she says, is making sure that an actual creditor who would otherwise be able to get this money for himself is actually essentially barred from doing so and the money goes into the estate and is split up among creditors. That the work of 544 is to give the trustee the ability to execute the claim that the actual creditor would otherwise have been able to in a way that undermines bankruptcy principles. So why isn't she right about that? If we think about what 544 is really about, then it seems to me to undermine your view that we should be reading 106 to allow for the trustee to recover money that an actual creditor would not have been able to recover. I think you're just saying Congress didn't pass 106. There's a waiver of sovereign immunity. No, no, no. I'm talking about the principles behind. Okay, but 544 has a waiver of sovereign immunity that the government concedes six ways to Sunday is written into 544B. And what Ms. Dubin says. I know what Ms. Dubin said. If I can just finish my answer. All right. Ms. Dubin agrees that 544B has the words in there, sovereign immunity is hereby abrogated. I think she's saying either Congress didn't put it in the right place. I don't know where she should have put it. She's saying that it's with respect to a subsection of 544, not the whole thing. Oh, no, she thinks it's in 544B, too, because she just says it's sitting there and waiting to be, I don't know, impregnated by another waiver of sovereign immunity. No, no, no. 106A absolutely refers to the section 544. It's in there. We see it. She says the work that that's doing is with respect to 544A, not B. And, in fact, when you think about what 544B is actually doing, it is inconsistent with an argument that sovereign immunity is supposed to be not taken into account and the actual creditor bar is not supposed to apply to the trustee. So she's giving work to 544 in 106A. She says it relates to 544A and that it really can't logically apply to 544B when we understand what 544B is doing. And the government's reply brief is completely silent on our argument that 106 has the, sorry, state law has the exact same relationship under A under B. It's incorporated. And absent a second waiver of sovereign immunity, there is nothing, there is no work that 106A does except as operate as a venue provision. It does no work as to waiving sovereign immunity as the underlying claim because she concedes 544A can never be used by a hypothetical creditor without a second waiver of sovereign immunity. So under all of 544, it operates as a contingent waiver. Isn't that what she's also saying with respect to B? She's saying there's no second waiver here and you need it. Correct. So you have to, but I mean, I think that makes her argument consistent. It's definitely consistent. Right. She's saying 544A can go forward despite 106 because there's a second waiver. Here there's not, so there shouldn't be. And all I'm saying is that there's no case nor any statute that has a waiver of sovereign immunity, certainly not with respect to a section that says we waive it as to the claim, but you can only bring the claim and succeed on it if there's a second waiver. And after Congress made this very broad, after this court twice narrowed it, it just would be a strange thing, especially when state law is also incorporated in the very provision at issue in Hoffman, the preferential, which also relies, it's the same thing. Thank you. Okay. There are no questions? You can continue. Oh. The one thing on the 548 and 544, it's true this is beyond the two-year period, but let's just not forget that 544 is supposed to apply to everybody. It applies to every transferee. And it would be particularly odd to say, well, Congress waived sovereign immunity with respect to both the two-year period under 548 and the generally four-year period under 548 except for the IRS. They are except, even though every other transferee, I guess with respect to all other governments, tribes, et cetera, don't get that two-year look-back period. And as here, the trustee had no choice because it had already, the bankruptcy petition was filed after the two-year period had expired, and so the trustee acted promptly going after all available assets. In terms of your question about how often are there creditors left over, if the trustee is doing his job, the answer should be none because the trustee is taking whatever claim, even if it's $5, and going after every single transferee within the time period, and every transferee would have to give back this money. And just in terms of the equities, the notion that this is not a roadmap for fraud, if the IRS had just given back the money, they would have had six years to go after these people. They just fought the case under sovereign immunity. But they will always have ten years, and this has a four-year statute of limitations. The government itself has a six-year fraudulent transfer statute, so they have two years longer than all the states does. I think that's all I have. If there are no... Thank you, Justice Thomas. Thank you, counsel. Thank you. Rebuttal, Ms. Dubin. Thank you, Mr. Chief Justice. Justice Jackson and Justice Barrett, you were both asking about 544A, and I just want to clarify something. 544A does not require a second waiver of sovereign immunity. 26 U.S.C. 6323 gives the hypothetical judgment lien creditor the right to prime a federal tax lien that isn't properly recorded. There's no suit required to do that. It just means that that tax lien is not valid against that hypothetical judgment lien creditor. The trustee can then step into the shoes of that judgment lien creditor. Again, no waiver of immunity required, and that is all encompassed within 544A and 26 U.S.C. 6323. Where 106A comes into being is to allow the trustee to effectuate that right within the bankruptcy proceeding, to bring an adversary proceeding to do things to make sure that it is enforcing the priority of that lien. Second, I wanted to come back to Justice Barrett's question about the defenses that a transferee could raise. This is in the red brief appendix at 9A, which is also Utah Code 2569. The good faith defense is a defense to a transfer, to avoidance, not to recovery. The third thing is that the trustee said that, in our view, you can't go after the insiders. That is not correct. You absolutely should go after the insiders and can go after the insiders. Our point is that going after the insiders in an avoidance action doesn't affect the rights of the United States. It just affects the transfer vis-a-vis the insiders. Justice Gorsuch, you asked a few times about the argument that 544B looks and requires an actual creditor. That is the trustee's alternative argument, but on the primary argument, everyone agrees. All the circuits have agreed. It is the uniform practice for over 100 years. And, in fact, this trustee has always pointed to a suit against the United States as the predicate for the 544B action. We don't think there's any reason to reach the alternative argument in this case, but if you do, for the reasons we explained in our reply brief, it's wrong. Finally, stepping back and moving to the primary argument, there's been a bunch of questions about 544B and what Congress would have wanted here. And the point that we've been making is that 544B has always been understood as a provision that brings liability that already exists into the bankruptcy code. There's no reason to think that when Congress generally waived immunity as to 544 and specifically said that it was not affecting the substance of those provisions, that what it actually was doing was creating new liability that had never existed against the United States under state fraudulent transfer law. Finally, on 106A, we think we have the much better reading of the text of 106A. The trustee's reading essentially hinges on the words with respect to, which cannot bear that weight. And if you add in the clear statement rule, we think we certainly should prevail on the text. But we have obviously been losing. We've lost this case in three courts. And I think the reason is that there's some intuition, that there's something strange about what's going on here, that somehow our reading renders 106A an empty gesture as to 544. But that's not right for the reasons we've discussed today. Under our reading, 544A has important meaning as to the United States, and 544B has meaning as to any sovereign that's waived its sovereign immunity from a fraudulent transfer action, as four states have done. But the trustee is right that his reading would mean that 544B would have more effect as to the United States. But I submit that that's a bug, not a feature of the trustee's reading. I don't think that Congress wanted to expose the United States to fraudulent transfer liability based on the terms set by state law. And I think we know that from the text of 106A. But Congress also passed a federal fraudulent transfer provision in Section 548, and it selected a two-year look-back period. And there's every reason to think that Congress intended that look-back period to apply to the IRS, not indeterminate limitations period set by 50 states. We ask that you reverse the judgment below. Thank you, Counsel. Case is submitted.